CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

NICHOLAS M. PARKER (CABN 297860)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7368
    nicholas.parker3@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br>   v. <br> LARRY AMADOR, <br>     Defendant. | CASE NO. 3:25-CR-00283-001 SI <br><br> **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** <br><br> Hearing Date: September 18, 2025 <br> Hearing Time: 10:30 a.m. <br> Courtroom: A (15th Floor) <br> Judge: Hon. Thomas S. Hixson |

## I.    PRELIMINARY STATEMENT

The defendant, Larry Amador, is charged with two drug distribution counts, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)–(C), based on sales of methamphetamine and cocaine to a confidential informant of the Federal Bureau of Investigation (FBI) in March and July 2024. *See* Dkt. 1.

The defendant is no stranger to criminal proceedings. In fact, he is no stranger to drug proceedings in this District: in August 2017, the defendant was charged in federal court with conspiracy to distribute and possess with intent to distribute large quantities of methamphetamine, heroin, and cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). *See* NDCA Case No. 3:17-cr-00244 WHO ("2017 NDCA Case"), Dkt. 225 (superseding indictment). He ultimately pleaded guilty in that case to using a telephone to commit a felony drug offense, in violation of 21 U.S.C. § 843(b), and Judge Orrick

sentenced him in January 2019 to 41 months in prison. *See* 2017 NDCA Case, Dkts. 606 (second superseding information), 609 (plea agreement), 714 (judgment).

The defendant—who was detained throughout the pendency of the 2017 NDCA Case—was released from prison in August 2020 and deported to Honduras in February 2021, but he promptly returned to the United States, in violation of the terms of his supervised release: Border Patrol agents arrested him near Hidalgo, Texas, in June 2021. *See* 2017 NDCA Case, Dkt. 1010. Soon thereafter, Judge Orrick transferred jurisdiction over the defendant's case to the Southern District of Texas. *See* 2017 NDCA Case, Dkts. 1037, 1038. There, the defendant was charged with, and pleaded guilty to, illegal reentry following deportation, in violation of 8 U.S.C. § 1326(a) and (b), and was sentenced to 18 months in prison. *See* SDTX Case No. 7:21-cr-01434, Dkt. 27 (judgment). His supervised release was revoked at the same time. *See* SDTX Case No. 7:21-cr-01700, Dkt. 7 (revocation judgment). The defendant served his sentence and was discharged from the custody of the Bureau of Prisons on or about October 7, 2022. Soon thereafter, he was deported again to Honduras—for at least the fourth time (2004, 2009, and 2021).

The defendant had returned to the United States by November 2023, when the FBI began investigating him on suspicion of trafficking cocaine and other drugs in the San Francisco Bay Area. That investigation led to the present indictment, in which the defendant (who is ineligible for "safety-valve" relief due to his criminal record) faces a five-year mandatory minimum prison term—and in which the specter of a charge carrying a 10-year mandatory minimum prison term looms. The defendant (i) has a decades-long history of dealing drugs (discussed in greater detail below); (ii) has demonstrated an unwillingness to abide by court-ordered conditions of release and a flagrant disregard for the laws of the United States; (iii) took steps to evade capture last week and told an acquaintance he was trying to flee; and (iv) has significant ties to Honduras. He has little incentive to see this case to its conclusion, serve five (or more) years in prison, and then be deported to Honduras, rather than simply skipping town now and lying low for a while before coming back, as he has done time and time again. Nor has either of the defendant's proposed sureties shown any inclination or ability to exercise moral suasion over the defendant, who has been living with his mother in San Francsico off-and-on for two decades (excepting the brief periods following his deportations to Honduras and his time in custody) and has committed

UNITED STATES' DETENTION MEMORANDUM      2
3:25-CR-00283-001 SI

many of the offenses discussed in this memorandum and in Pretrial Services' pre-bail report (Dkt. 13) while living under her roof.

The government agrees with Pretrial Services: to ensure the defendant's appearance in court and the safety of the community, the Court must order the defendant detained pending trial. *See* Dkt. 13 at 11.

## II. FACTUAL BACKGROUND

The FBI began investigating the defendant in November 2023 upon learning that he had returned to the Bay Area and was promoting his access to large quantities of cocaine and his ties to the Sinaloa Cartel to potential drug buyers. In March 2024, a confidential source reached out to the defendant and set up an initial deal for one ounce of cocaine. That deal ultimately occurred in Daly City, California, on March 29, 2024, when the defendant sold the FBI source 27.9 grams (net) of cocaine for $750.

In the weeks that followed, the defendant and the FBI source negotiated a deal for a kilogram of cocaine, for which the defendant said he would charge the FBI source $19,000. Although the defendant took steps to consummate that deal, it never actually occurred. Instead, in early July 2024, the FBI source contacted the defendant and asked to buy a pound of methamphetamine. A few days later, the defendant contacted the FBI source and said he was out of town but that someone else would sell the FBI source methamphetamine. Later that day, a different man who is charged in the same indictment as the defendant (Jonatas Costa) contacted the FBI source and agreed to sell him a pound of methamphetamine for $1,200. That deal occurred the following day, and both it and the March 2024 transaction were recorded.

Although the two transactions in which the defendant is charged occurred in March and July 2024, the defendant was in frequent contact with Costa—who is charged in several additional counts, and who sold drugs to the FBI source as recently as April 2025—throughout the duration of this investigation. For example, between March 15, 2025, and April 20, 2025, the defendant communicated with Costa at least 400 times over WhatsApp (60 calls, 340 text messages). Additional evidence shows that the defendant and Costa spoke repeatedly over both WhatsApp and Facebook Messenger in the four weeks before the defendant and Costa were arrested in September 2025.

On September 12, 2025, at about 6:00 a.m., law enforcement personnel executed a search warrant at the defendant's residence in San Francisco. The defendant was not present. Coincidentally,

1  however, the defendant arrived home in his car while law enforcement personnel were at his house.
2  Upon seeing officers at his house, the defendant elected not to stop—he later told FBI agents in
3  substance that he wanted to get out of there—and he sent the following message to an acquaintance at
4  about 2:38 p.m.: "Sorry, look, I had a problem, the police came to the house and I'm trying to figure out
5  how to get out. Could you send me the money please, it's only 400"[1]:

20  Daly City police officers arrested the defendant in his car about eight hours later.

### III. LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *See United States v. Motamedi*, 767

---

[1] This is a rough Spanish-to-English translation prepared using Google Translate.

UNITED STATES' DETENTION MEMORANDUM   4
3:25-CR-00283-001 SI

F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *See id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible. *See id.* Consideration of factors outside the articulated factors set forth in Section 3142 is also disfavored. *See id.*

Where (as here) there is probable cause that a defendant has violated the Controlled Substances Act and faces a maximum of 10 years in prison or more, courts apply a rebuttable presumption against the defendant that no condition or combination of conditions reasonably will assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production then shifts to the defendant. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Although the presumption is rebuttable, it is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990). In other words, the presumption is not so weak that if a defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge (or jury) to decide the question without reference to the presumption." *Id.* (further stating that such an approach would "render the presumption virtually meaningless" because a defendant can "always provide the magistrate with *some* reason" (emphasis added)). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See United States v. King*, 849 F.2d 485 (11th Cir. 1988); *accord United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (citing *Jessup*, 757 F.2d at 389).

If the Court concludes that the defendant has rebutted the statutory presumption of detention, the court must consider four factors in determining whether the pretrial detention standard is met. Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's

UNITED STATES' DETENTION MEMORANDUM    5
3:25-CR-00283-001 SI

character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## IV.   ARGUMENT

### A.   The Defendant Is Subject to a Rebuttable Presumption in Favor of Detention

The defendant is charged with two violations of the Controlled Substances Act, including one that carries a statutory maximum sentence of 40 years and a mandatory minimum sentence of five years. *See* Dkt. 1 (charging defendant with violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B)–(C)). As such, the defendant is subject to a rebuttable presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3)(A). To overcome this presumption, the defendant must show that he is not a flight risk *and* that his release will not endanger the community. He cannot make either showing, let alone both.

### B.   The Defendant Cannot Rebut the Presumption That He Is Dangerous

The defendant has been selling drugs in the Bay Area for decades. He was convicted on drug trafficking charges in California state court in May 1998, October 1999, and February 2009—having served a total of four years in prison on those convictions—before his federal conviction (also on a drug offense) before Judge Orrick in January 2019. He has at least six *other* arrests on suspicion of selling drugs in San Francisco and San Mateo County: in March 1998, September 1999 (twice), October 1999, September 2012, and July 2014. And the defendant is, of course, charged with drug trafficking crimes in this case. His "continuing involvement with the distribution of drugs" militates in favor of detention. *United States v. Wolf*, 2015 WL 4573039, at *3 (N.D. Cal. July 29, 2015); *United States v. Fulgham*, 2012 WL 2792439, at *4 (N.D. Cal. July 9, 2012) ("The risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community. Defendant's tendency to repeatedly commit similar crimes shows that he poses an unmitigable danger to the community." (quotation marks and citation omitted)).

The defendant is a professional drug dealer who has committed most of these crimes, including the one with which he is now charged, while living in the same residence as one of his proposed

sureties—a residence where law enforcement officers repeatedly have found contraband over the years. No one in the defendant's life—not his mother and not the mother of his child, has proven capable of influencing the defendant or steering him away from his life of crime. The defendant's decades-long track record of selling drugs in the Bay Area, *including after a federal drug conviction*, demonstrates that the only way to safeguard the community from the defendant is to detain him pending trial.

### C.     The Defendant Presents a Significant Flight Risk

It is clear the defendant has significant ties to the Bay Area. He has returned here following post-conviction deportations to Honduras at least three times. He was presumably on his way here when he was arrested near the border in Texas in June 2021, following his conviction in the 2017 NDCA Case. The government has no doubt he will try to come back here again following any deportation that flows out of these criminal proceedings. It is not hard to see why: several of the defendant's family members, including his mother and two of his children, live here. Perhaps as important, though, the defendant's gang associates are here.[2] His drug customers are here. The defendant is a career criminal who has spent the past two decades-plus committing crimes in San Francisco. It would be perverse to reward the defendant for his many years of lawless behavior by releasing him pending trial merely because he committed his crimes here and has shown a dogged determination to return here in violation of the law.

Moreover, it is indisputable that the defendant appreciates the gravity of federal drug charges, and he has already made it known he would prefer not to go to prison. He made plans to try to evade arrest last week. He never failed to appear in his prior federal criminal cases, but only because he was detained for both of them. And he does have a long history of failures under court-ordered supervision: he violated parole in October 1999 and June 2003 (when he was arrested for, among other things, impersonating someone else and attempting to pass a bad check), and he violated probation in October 2009 and September 2012. As discussed above, he also violated the terms of supervised release as imposed by Judge Orrick in June 2021. In short, the Court has no basis upon which to conclude that the defendant is an appropriate candidate for pretrial release.

---

[2] The defendant told Pretrial Services he drives for Uber and Lyft. That may be true, but he also works as a bouncer at a known Norteño bar in the Mission District of San Francisco—a fact he apparently elected not to tell Pretrial Services.

UNITED STATES' DETENTION MEMORANDUM     7
3:25-CR-00283-001 SI

In consideration of all the facts—including the defendant's extensive criminal history and his demonstrated efforts to evade capture, the nature and circumstances of this offense, the weight of the evidence against the defendant, and the significant sentence he faces if convicted—there is a substantial risk that the defendant will refuse to abide by any court-ordered conditions of release and flee.

## V.     CONCLUSION

There is no set of conditions that will reasonably assure the appearance of the defendant at court proceedings or ensure the safety of the community. The Court should order the defendant detained pending trial.

DATED: September 17, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

 /s/ Nicholas M. Parker
NICHOLAS M. PARKER
Assistant United States Attorney